Eric Stephenson (9779)
STEPHENSON LAW FIRM
250 North Redcliffs Drive, 4B #254
Saint George, Utah 84790
Phone: (801) 386-5200
ericstephenson@utahjustice.com

*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| MICHAEL W. SMITH,<br><br>Plaintiff,<br><br>vs.<br><br>EXPRESS RECOVERY SERVICES INC., and EDWIN B. PARRY,<br><br>Defendants. | **SECOND AMENDED COMPLAINT**<br><br>*Jury Trial Demanded*<br><br>Case Number: 1:22-cv-00037-DBB<br>Judge: David Barlow |

JURISDICTION AND VENUE

1. This action arises from Defendant's violations of the Fair Debt Collection Practices Act (FDCPA) 15 U.S.C. § 1692, *et seq.*, and the Utah Consumer Sales Practices Act (UCSPA) Utah Code Ann. § 13-11-1 *et seq.*, in their deceptive and illegal efforts to collect a consumer debt from the Plaintiff.

2. Jurisdiction in this case is founded upon 28 U.S.C. § 1331, § 1367, and 15 U.S.C. § 1692k, which grant the United States District Courts jurisdiction to hear this action without regard to the amount in controversy.

3. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b) because the acts and transactions giving rise to Plaintiff's claims occurred within this federal judicial district and because the Defendant's conduct business and reside in the State of Utah within the meaning of 28 U.S.C. § 1391(b) and (c).

4. This Court has personal jurisdiction over the Defendants in this case because they have continuous and systematic contacts with the State of Utah including; residing in Utah, conducting business in Utah, regularly collecting or attempting to collect debt in Utah, and by availing themselves of the benefits of the Utah legal and judicial systems.

## PARTIES

5. The Plaintiff Michael Smith is a natural person who resides in Utah. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) and was directly harmed by the Defendants' conduct and violations complained of herein.

6. Defendant Express Recovery Services Inc., is a debt collection agency incorporated in Utah that regularly collects and attempts to collect debts in Utah, from Utah consumers, and from the Plaintiff in particular.

7. Defendant Edwin B. Parry is a debt collection attorney who resides and conducts business in Utah and regularly collects past due debts on behalf of Express Recovery Services and others throughout the State of Utah.

8. Both of these Defendants are located at 2790 Decker Lake Drive, West Valley, Utah 84119.

9. Each of the Defendants regularly collect past due debts incurred by Utah consumers for personal, family, or household purposes and originally owed or due to another and from Plaintiff in particular.

10. Because they each regularly conduct business in the State of Utah by collecting and attempting to collect past due debts from Utah consumers, each of the Defendants is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

11. Because they each solicit, enter, negotiate, and enforce consumer agreements by collecting and attempting to collect debts in connection with consumer transactions, Defendants are each a "person" as defined in Utah Code Ann. § 13-11-3(5), and a "supplier" as defined in Utah Code Ann. § 13-11-3(6).

12. Defendants' debt collection efforts include, *inter alia*, placing phone calls and mailing letters to Utah consumers; participating in lawsuits in Utah; communicating by telephone, email, mail, text, and other electronic means with Utah residents; soliciting, entering, and enforcing agreements with Utah consumers; and negotiating payments for consumer debts to collect past due amounts of money from Utah consumers.

## FACTUAL ALLEGATIONS

13. On December 17, 2019 Plaintiff was injured in an industrial accident in the course and scope of his employment.

14. Plaintiff was treated for his injuries by Ogden Clinic.

15. While being treated for his injuries, Plaintiff told Ogden Clinic those injuries occurred within the course and scope of his employment and would be paid for by worker's compensation insurance.

16. The worker's compensation insurance did not pay in a timely manner so the alleged debt owed for Plaintiff's medical services fell delinquent.

17. Ogden Clinic then assigned the past due alleged debt to Defendants who began collecting on behalf of Ogden Clinic.

18. The alleged debt was for medical services which are personal, family, or household purposes. The alleged debt is therefore a "debt" as defined by

15 U.S.C. § 1692a(5) and a "consumer transaction" as defined by Utah Code Ann. § 13-11-3(2).

19. In attempting to collect the alleged debt on behalf of Ogden Clinic, Defendants each sent collection letters to the Plaintiff and participated in a lawsuit against the Plaintiff.

20. Upon information and belief, none of the Defendants ever contacted anyone other than Defendant to request payment for the alleged debt.

21. Defendant Express Recovery Services sent Plaintiff a collection letter on October 8, 2021.

22. In its collection letter, Express Recovery represented that the principal amount due was $1,111.39, interest of $104.74 was due, and the total balance due was $1,216.13.

23. Plaintiff did not owe the amounts demanded in Express Recovery's letter.

24. As of October 9, 2021 the amount due was not $1,216.13.

25. Express Recovery's October 8, 2021 collection letter was its first contact with Plaintiff but it did not notify Plaintiff of his right to request validation of the alleged debt.

26. Upon information and belief, Express Recovery did not send Plaintiff notification of his right to request validation of the alleged debt within five days of its first communication to collect it.

27. Defendant Edwin B. Parry sent a collection letter to Plaintiff on October 11, 2021.

28. Parry's letter represented that $1,111.39 was due for the principal amount plus an additional $105.66 for a total amount demanded of $1,217.05.

29. Plaintiff did not owe the amounts demanded in Parry's letter.

30. As of October 11, 2021 the amount due was not $1,217.05.
31. Upon information and belief, the reason Parry's collection letter demanded a higher amount than Express Recovery's letter is because Parry added interest he was compounding on a daily basis.
32. Upon information and belief, Express Recovery also added daily compounded interest to the amount it attempted to collect.
33. Plaintiff was anxious and confused about getting the conflicting collection letters.
34. Neither letter explained why two different companies were collecting the same debt, why anyone was collecting a worker's compensation debt at all, or why interest was compounding daily.
35. The two collection letters were inconsistent and contradictory as to whether Plaintiff was required to pay, how much to pay, or who to pay.
36. Upon information and belief, Defendants sent other collection letters to attempt to collect the alleged debt on behalf of Ogden Clinic.
37. Upon information and belief, Defendants knowingly and intentionally coordinated the timing of their collection letters with each other.
38. Upon information and belief, Defendants knowingly and intentionally coordinated the timing of their collection letters with each other to confuse Plaintiff, intimidate Plaintiff, and increase the collection fees, attorney's fees, and costs they could collect.
39. Upon information and belief, the Defendants share office space, information, personnel, software, business systems, and equipment with each other.

40. Upon information and belief, Defendants' operations, collection methods, timing, systems, and coordination are all so closely linked that Defendants are essentially operating as a single entity holding themselves out as separate entities so they can increase their collection of fees and other amounts from consumers.

41. Upon information and belief, none of the Defendants performed a reasonable investigation into the alleged debt prior to demanding payment.

42. A reasonable investigation would have revealed that the alleged debt was not owed by Plaintiff but instead subject to payment through worker's compensation.

43. On October 25, 2021 Plaintiff's attorney sent Defendants a letter.

44. Upon information and belief, Defendants received and read that letter.

45. Plaintiff's attorney's letter identified him as Plaintiff's attorney, notified Defendants that the debt was subject to payment under Utah's Workers Compensation statutes, and demanded Defendants cease any additional efforts to collect the alleged debt.

46. Instead of ceasing their efforts to collect the debt, Defendants commenced a collection lawsuit against the Plaintiff on December 5, 2021.

47. In the lawsuit Defendants attempted to collect from Plaintiff the principal amount of $889.11 plus an additional $207.72 for interest; a collection fee in the amount of $222.28; attorney's fees in the amount of $350.00; and court costs, service fees, and interest accrued since the date of the Complaint, post-judgment interest, and other relief.

48. The amounts Defendants attempted to collect in their lawsuit were false.

49. Plaintiff did not owe any of the amounts listed in the Defendants' collection lawsuit.

50. The principal amount of the alleged debt was never $889.11.

51. There is no contract in which Plaintiff agreed to allow Ogden Clinic or its assignees to compound interest on a daily basis.

52. Because there is no contract in which Plaintiff agreed to allow interest to compound on a daily basis, compounding interest on a daily basis was unlawful under Utah law.[1]

53. Plaintiff filed a Motion to Dismiss the collection lawsuit on January 5, 2022 on the grounds that Plaintiff was never responsible for the alleged debt and that the Court never had the authority to adjudicate the claims Defendants asserted.

54. Plaintiff's Motion to Dismiss was granted and Defendants' collection lawsuit was dismissed with prejudice on February 1, 2022.

55. Defendants knew and should have known prior to suing the Plaintiff that billing Plaintiff, compounding interest daily, and filing and prosecuting the collection lawsuit were prohibited by Utah law.

56. The Utah District Court never had jurisdiction over the collection claims asserted by the Defendants.

57. Because the alleged debt was for a work injury Plaintiff was never responsible for payment of the alleged debt or any portion of the alleged debt.[2]

---

[1] Utah Code Ann. § 15-1-3
[2] Utah Code Ann. § 34A-2-101 *et seq*.

58. It was unlawful for Defendants to even bill Plaintiff for the medical services resulting from injuries that occurred in the course and scope of his employment.[3]

59. Filing the collection lawsuit was also unlawful since Utah law prohibits a medical provider and its assignees from commencing a lawsuit in the Utah District Court to collect a medical debt for medical services that result from injuries that occur in the course and scope of a worker's employment.[4]

60. Even though they knew their filing and prosecution of the state case was unlawful, Defendants never voluntarily dismissed the collection lawsuit.

61. Defendants also never took any action to reduce the harm to Plaintiff's reputation and privacy that was caused, and would continue to be caused, by the existence of the lawsuit in the public record.

62. On December 7, 2021, one of Plaintiff's attorneys requested documentation of the alleged debt from the Defendants.

63. In response to that letter Defendants provided what they deemed to be proper verification of the alleged debt.

64. The documents Defendants provided were a jumbled and incoherent spreadsheet, some pages of a multi-page contract, and a copy of Parry's collection letter.

65. Despite providing some documentation, Defendants did not produce anything to verify how they calculated the amount they were seeking to collect or how interest was compounded.

---

[3] Utah Admin. Code R612-300-7
[4] Utah Code Ann. §§ 34A-2-407(12)(a), 34A-2-407(12)(b), and 34A-2-401(2)

66. Upon information and belief, Defendants intentionally concealed the actual principal amount of the alleged debt and the manner in which they calculated and compounded interest when providing their verification documentation.

67. Defendants also never provided any documentation of their assignment or any explanation for why they deemed it appropriate to pursue Plaintiff for a worker's compensation debt.

68. Upon information and belief, the Defendants made other false, deceptive, and unfair representations, implications, demands, concealments, and threats in attempting to collect the alleged debt.

69. Upon information and belief, the Defendants communicated with each other and with others to attempt to collect the alleged debt.

70. Each of the letters, court representations, and other conveyances of information Defendants made were "communications" under the FDCPA.[5]

71. At all relevant times Defendants were acting through their agents, servants, employees, principals, or others within the course and scope of their agency or employment.

72. At all relevant times the Defendants' conduct was intentional, willful, reckless, and in grossly negligent disregard for federal and state law and the Plaintiff's rights.

73. As a result of Defendants' conduct, Plaintiff incurred attorney's fees and costs to resolve the collections lawsuit and he suffered concrete and actual personal injury damages, including *inter alia*; invasion of privacy, damage to his reputation and standing in the community, intrusion upon his

---

[5] 15 U.S.C. § 1692a(2)

seclusion, emotional distress, humiliation, stress, anxiety, frustration, confusion, panic, headaches, sleeplessness, irritability, tightness in his chest, involuntary trembling, and other personal injuries and emotional distress.

74. Plaintiff's injuries are particularized and concrete but difficult to quantify as the value of those damages are ultimately a jury decision.

## COUNT I
### Fair Debt Collection Practices Act
*15 U.S.C. § 1692 et seq.*

75. Plaintiff hereby incorporates all other allegations set forth herein.

76. The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."[6]

77. "The FDCPA is a remedial statute aimed at curbing what Congress considered to be an industry-wide pattern of and propensity towards abusing debtors."[7] It prohibits, and imposes strict liability and both statutory and actual damages for, a wide range of abusive and unfair practices.[8]

78. Whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer."[9] The standard is an objective one—whether the plaintiffs or any class members were misled is

---

[6] 15 U.S.C. § 1692(e)
[7] *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162, 1171 (9th Cir.2006)
[8] *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010)
[9] *Avila v. Rubin*, 84 F.3d 222, 227 (7th Cir. 1996); *Gammon v. GC Services, LP*, 27 F.3d 1254, 1257 (7th Cir. 1994)

not an element of a cause of action.[10] "The question is not whether these plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled."[11]

79. The unsophisticated consumer would interpret and Plaintiff did interpret the Defendants' conduct as attempting to collect the principal amount, interest, collection fees, and attorney's fees from him even though they knew he did not owe those amounts.

80. The representations, threats, and implications Defendants made in their collection letters and lawsuit against the Plaintiff were false, deceptive, unfair, illegal, and misleading and were made for the purpose of forcing Plaintiff into paying a debt he did not owe.

81. An unsophisticated consumer would be, and Plaintiff was, confused, intimidated, and unreasonably burdened by Defendants' false, misleading, deceptive, and unfair representations, threats, and implications.

82. To protect him from the Defendants' false, misleading, deceptive, illegal, and unfair representations, threats, and implications, Plaintiff had to engage two attorneys and incurred attorney's fees and costs as a result.

83. The representations, implications, demands, threats, conduct, actions, and omissions by which the Defendants collected the alleged debt, and violating the Utah Worker's Compensation Act in attempting to collect the debt, caused Plaintiff damages as described herein and were violations of numerous and multiple provisions of the FDCPA, including, but not limited to; 1692d, 1692e, 1692e(2)(A), 1692e(2)(B), 1692e(5),

---

[10] *Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir. 1997)
[11] *Beattie v. D.M. Collections Inc.*, 754 F. Supp. 383, 392 (D. Del. 1991)

1692e(6)(A), 1692e(6)(B), 1692e(10), 1692e(12), 1692f, and 1692f(1), amongst others.

84. By failing to send notice of Plaintiff's rights to request validation of the alleged debt Defendant Express Recovery violated 15 U.S.C. § 1692g(a)

85. As a result of the Defendants' violations of the FDCPA, Plaintiff suffered concrete actual damages as described herein and is entitled to an award against the Defendants jointly and severally for causing those damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2); and attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

## COUNT II
### Utah Consumer Sales Practices Act
*Utah Code Ann. § 13-11-1 et seq.*

86. Plaintiff hereby incorporates all other allegations set forth herein.

87. The Utah Consumer Sales Practices Act was enacted to "protect consumers from suppliers who commit deceptive and unconscionable sales practices" and to "recognize and protect suppliers who in good faith comply with the provisions of this act."[12]

88. Under its plain language the UCSPA "shall be construed liberally" to promote those policies.[13]

89. The UCSPA protects consumers from deceptive acts or practices whether they occur before, during, or after the consumer transaction.[14]

---

[12] Utah Code Ann. § 13-11-2
[13] *Id.*
[14] Utah Code Ann. 13-11-4(1)

90. Defendants knowingly and intentionally made the representations and took the actions discussed herein that were false, deceptive, malicious, illegal, and unconscionable.

91. Defendants knowingly and intentionally violated the Utah Worker's Compensation Act through their efforts to collect the alleged debt.

92. Defendants knowingly and intentionally misrepresented the amounts it claimed Plaintiff owed.

93. Defendants knowingly and intentionally charged Plaintiff with interest compounded on a daily basis.

94. Defendants knowingly and intentionally attempted to collect the principal amount, attorney's fees, interest, and collection fees from the Plaintiff.

95. Even after receiving notice the alleged debt was subject to payment by worker's compensation, Defendants knowingly and intentionally continued attempting to collect the principal amount, attorney's fees, interest, and collection fees from the Plaintiff.

96. Prior to making any attempts to collect the alleged debt, Defendants had an obligation to verify whether it was lawful to collect from Plaintiff but Defendants did not make any reasonable effort to verify the alleged debt.

97. As soon as Defendants received notice Plaintiff was not responsible for payment they should have stopped attempting to collect the debt and reimbursed him for his attorney's fees.

98. Instead of ceasing their collection attempts, Defendants prosecuted a lawsuit to collect the alleged debt they knew Plaintiff did not owe.

99. Defendants' other knowing and intentional conduct, threats, representations, and other actions discussed herein also constitute violations of the Utah Consumer Sales Practices.

100. By knowingly or intentionally engaging in the conduct described herein, each of the Defendants violated the Utah Consumer Sales Practices Act.

101. By knowingly or intentionally violating the Utah Worker's Compensation Act to collect a debt Defendants violated the Utah Consumer Sales Practices Act.

102. Defendants' conduct described herein was illegal, willful and malicious, intentionally fraudulent, or manifested a knowing and reckless indifference toward, and a disregard of, the rights of the Plaintiff.

103. Defendants knew or should have known their conduct was unlawful, deceptive, fraudulent, and malicious.

104. By engaging in the conduct described herein, the Defendant exercised a gross inequality of bargaining power and deprived Plaintiff of any meaningful choice.

105. If Plaintiff had not defended himself in the collection lawsuit, Defendants would have taken a default judgment against him and pursued post-judgment collections against him to collect the alleged debt.

106. Defendants' conduct caused Plaintiff to defend himself in the collection lawsuit and to incur attorney's fees and costs.

107. Defendants' conduct caused Plaintiff to sustain emotional distress and other personal injuries.

108. No decent, fair-minded person would view the Defendant's conduct, or the lack of any meaningful choice that conduct created, without being possessed of a profound sense of injustice.

109. As a result of each of Defendants' violations of the UCSPA, Plaintiff suffered the concrete actual damages described herein and requests this Court for an award against Defendants, jointly and severally, for actual and punitive damages in an amount to be proven at trial, and for all other relief which Plaintiff may be entitled pursuant to Utah Code Ann. § 13-11-19 and Utah Code Ann. §78B-8-201.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests judgment against Defendants jointly and severally as follows:

1. For an award of actual and statutory damages in an amount to be determined by the jury;
2. For an award of punitive damages in an amount to be determined by the jury;
3. For an award of Plaintiff's attorney's fees and costs reasonably incurred in this action;
4. For pre-judgment and post judgment interest at the legal rates;
5. For leave to amend this Complaint as the interests of justice may allow; and
6. For such other and further additional relief as may be determined to be appropriate and as the Court may find just and proper.

## JURY DEMAND

Plaintiff hereby demands trial by jury on all issues so triable.

DATED 4/22/2022

Eric Stephenson
*Attorney for the Plaintiff*